IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ABIGAIL LEHUA HALE, | ) | Civ. No. 05-00709 ACK-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAWAII PUBLICATIONS, INC., dba | ) | |
| THE MAUI BULLETIN; MORGAN | ) | |
| MIGITA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PROCEDURAL BACKGROUND

On November 7, 2005, Abigail Lehua Hale ("Plaintiff")
filed a Complaint in this Court against Hawaii Publications,
Inc., doing business as The Maui Bulletin (the "Maui Bulletin"),
and Morgan Migita ("Migita") (collectively "Defendants").
Plaintiff alleges that Defendants sexually harassed her and
retaliated against her in violation of Title VII, 42 U.S.C. §
1981, and the State of Hawaii Fair Employment Act.  Finally,
Plaintiff claims that Defendants intentionally inflicted
emotional distress upon her and that they should be liable for
punitive damages.

On December 22, 2005, the Maui Bulletin filed its

1

Answer to Plaintiff's Complaint.  Migita filed his Answer on January 24, 2006.

Plaintiff was dilatory in submitting her Rule 16 Scheduling Conference statement and her attorney failed to appear at the Rule 16 Scheduling Conference on February 6, 2006. Magistrate Judge Kurren (the "Magistrate") issued an Order to Show Cause as to why the case should not be dismissed and set a hearing for February 16, 2006.  On February 14, 2006, Plaintiff's counsel sent a letter to Defendants apologizing for missing the Rule 16 Scheduling Conference, attributing his absence to a calendar error.  On February 16, 2006, the parties appeared before the Magistrate and conducted the Rule 16 Scheduling Conference.  No action was taken on the Order to Show Cause.

On June 15, 2006, the Maui Bulletin filed a Motion to Dismiss under Rule 37(d) & 41(b) or, in the alternative, to Compel Discovery Responses and Award Sanctions.  Migita filed a Joinder to the Maui Bulletin's motion on June 19, 2006. Plaintiff filed an opposition to the motion on July 5, 2006.  The Maui Bulletin filed a reply on July 10, 2006.

On July 21, 2006, the Magistrate held a hearing at which he granted in part and denied in part the Maui Bulletin's motion.  The effect of the order, issued August 9, 2006, was to compel Plaintiff to produce her original datebook to the Maui Bulletin's counsel for inspection.  The motion was denied in all

2

other respects.

In the meantime, the Maui Bulletin also filed a Motion for Leave to File an Amended Answer to the Complaint.  On September 6, 2006, the Magistrate granted the Maui Bulletin leave to file an amended answer without a hearing.  On September 21, 2006, Plaintiff filed a Statement of Non-Opposition to the Maui Bulletin's Motion for Leave to File an Amended Answer.  On September 26, 2006, Migita filed a Statement of No Position to the same motion.  The Maui Bulletin filed its First Amended Answer on September 22, 2006.

On September 6, 2006, the same day that the Magistrate granted the Maui Bulletin leave to file an amended answer, the Maui Bulletin filed a Motion for Summary Judgment ("Motion").  Migita filed a Motion for Joinder to the Maui Bulletin's Motion ("Joinder") on September 8, 2006.  A hearing was then scheduled for November 11, 2006.

Upon realizing that it had neglected to file a concise statement of facts along with the Motion, the Maui Bulletin requested a continuation of the hearing on October 13, 2006.  That same day, the Court continued the hearing until December 4, 2006.

On October 14, 2006, the Maui Bulletin filed a Concise Statement in Support of its Motion ("Motion CSF").  It attached exhibits A-G to the Motion CSF.

3

Plaintiff filed a Memorandum in Opposition to the Maui Bulletin's Motion ("Opposition") on November 15, 2006.  At the same time, Plaintiff filed a Counter-Statement of Facts in Opposition to the Maui Bulletin's Concise Statement of Facts ("Opposition CSF").  On November 20, 2006, Plaintiff submitted an Errata to her Opposition comprised of a Table of Contents and Table of Authorities.  The Maui Bulletin filed a Reply Memorandum in Support of its Motion on November 22, 2006.  It then filed a substantially similar Amended Reply Memorandum ("Reply") on November 24, 2006.

The parties appeared before this Court to address the Maui Bulletin's Motion and Migita's Joinder on December 4, 2006.

## FACTUAL BACKGROUND[1]

Plaintiff was hired to be an advertising sales associate for the Maui Bulletin on December 18, 2002.  Complaint ¶ 6; Motion at 3.  She earned $300 a week plus a 15% commission on  sales.  Opposition CSF, Ex. 2 (Charge of Discrimination).  The Maui Bulletin provided Plaintiff with a copy of its policy prohibiting sexual harassment at the time she was hired.  Motion CSF ¶ 2; Motion CSF, Ex. B.  On December 31, 2002, Plaintiff signed an Employee Acknowledgment form indicating that she

---

[1] The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

received the Maui Bulletin's Harassment Policy and Procedures ("Company Policy").  Motion CSF, Ex. B at 1.  Plaintiff states that she received the document but no accompanying discussion took place regarding the sexual harassment policies.  Opposition CSF, Plaintiff Declaration ¶ 2.

In the Company Policy, the Maui Bulletin states that it "strongly disapproves of and will not tolerate harassment of any employee . . . based upon . . . sex . . . under any circumstances."  Motion CSF, Ex. B at 2.  The Company Policy then defines sexual harassment and explains the types of consequences that an employee who violates the policy might face.  Id. Employees who suffer such harassment are "urged to bring the matter immediately to the attention of company officials so that [they] may investigate and deal with the problem."  Id. at 3.

At all relevant times, Migita was employed by the Maui Bulletin and served as Plaintiff's supervisor.  Complaint ¶ 3. Plaintiff claims that Migita sexually harassed her from the time her employment at the Maui Bulletin commenced.  Id. ¶ 6. Starting as early as January 2003, Plaintiff alleges Defendant required her to complete unnecessary sales training sessions with him and to accompany him for "dining out" restaurant reviews. Opposition CSF, Plaintiff Declaration ¶¶ 23-29; Opposition CSF, Ex. 2 (Pre-Complaint Questionnaire) at 31013300078.  Plaintiff believes that these activities were designed by Migita to be

dates, and not professional encounters.  Id.  Plaintiff alleges
that he made frequent calls to her home late at night and on
weekends.  Id.  Eventually, the conduct was so persistent that
Plaintiff's fiancé became suspicious of the relationship.  Motion
CSF, Ex. A, Plaintiff Deposition at 86:12-16.  Some time near the
end of March 2003, Plaintiff complained to Migita about his
behavior and ended her participation in the individualized
training sessions and dining-out reviews.  Opposition CSF, Ex. 2
(Pre-Complaint Questionnaire).

   Soon after she informed Migita that she would no longer
interact with him in one on one settings, Plaintiff alleges that
Migita began treating her in a way that adversely affected her
work performance.  She claims that he, among other things,
demanded accounts of her whereabouts, unfairly distributed
accounts to other sales personnel, interfered with the accounts
that she held, and generally scrutinized her work.  Opposition
CSF, Ex. 2 Charge of Discrimination.  Plaintiff also alleges that
her employer attempted to dock $600 from her paycheck for
unnecessary medical coverage for her daughter.  Opposition CSF,
Ex. 1.

   In addition, throughout the first three or four months
of her employment, Plaintiff claims that Migita frequently used
sexually graphic language and "repeatedly made reference to
explicit sexual acts."  Opposition CSF, Ex. 2 (Pre-Complaint

Questionnaire).  Some examples of this language include: "I
screwed this chick so hard she wet the bed"; telling her that he
"wanted to fuck the bartender"; and describing a situation where
he found himself naked outside one night after drinking
excessively when a woman appeared and "gasped because she saw his
anatomy."  Plaintiff Deposition at 113-115.  He also inquired as
to whether her cousin would have "a purely sexual uninhibited
relationship" with him.  Opposition CSF, Ex. 2 (Pre-Complaint
Questionnaire).  Plaintiff testified that the egregious sexual
comments also stopped in March 2003.

        Plaintiff explains that Migita's conduct went beyond
verbal harassment and that he "touched [her] inappropriately
during a sales meeting."  Plaintiff Declaration ¶ 29.  This
allegation arises out of Plaintiff and Migita's business trip to
a gym for the purpose of investigating corporate memberships.
Plaintiff Deposition at 63.  Plaintiff alleges that Migita forced
her to work with weights and then inappropriately touched her
under the guise that he was spotting her.  Plaintiff Deposition
at 65:10-16; 67:4-10.  Plaintiff testified that this was the only
time that Migita touched her.  Motion, Ex. C, Plaintiff
Deposition 137:3-6; 140:20-141:6.

        In late April 2003, Plaintiff began keeping handwritten
notes regarding Migita's conduct.  Opposition CSF, Ex. 6.
Thereafter, Plaintiff had an encounter with a fellow employee,

7

Ayin Adams, where Adams discovered Plaintiff distraught over her daughter's medical insurance charges.  Opposition CSF, Ex. 1.  It was at this time that Plaintiff confided in Adams about the sexual harassment.  Id.

Approximately one month later, on June 3, 2003, Ayin Adams confronted Kathleen Piimauna, the Maui Bulletin's Regional Accounting Manager, to report Migita's conduct.  Motion CSF, Piimauna Declaration ¶ 2.  In response, Piimauna conducted an investigation of Migita's behavior, during which she interviewed Plaintiff and many of her co-workers.  Id. ¶¶ 3-4.  At the conclusion of the investigation, the Maui Bulletin determined that Migita had used inappropriate language and discussed the investigation with other co-workers.  Motion CSF, Ex. E (Re: Investigation of Complaint Letter).  As a result, on June 19, 2003, the Maui Bulletin suspended Migita for one week without pay.  Id.  The Maui Bulletin found no evidence of sexual harassment during the course of its investigation, but ordered Migita to attend sexual harassment training.  Id.

Just prior to Migita's suspension taking effect, Plaintiff took two weeks leave, in order to cope with the stress that she was under as a result of the hostile work environment. She states that she was not aware that Migita was suspended because she was on leave.  Plaintiff Declaration ¶ 55.  Upon her return to work on June 30, 2003, Plaintiff approached the office

8

and found Migita "standing in front of the desk, blocking the doorway with his arms crossed, . . . , in a very aggressive stance and not allowing [her] to walk in that door." Plaintiff Deposition at 101:4-102:18. At this point, Plaintiff concluded that she could no longer work at the Maui Bulletin. She collected her belongings, went to Kathleen Piimauna's office, and hastily penned a resignation letter. Plaintiff Deposition at 109:17-20.

On November 19, 2003, Plaintiff submitted a Pre-Complaint Questionnaire to the Hawaii Civil Rights Commission ("HCRC") alleging sexual harassment and retaliation, including a charge of constructive discharge. Plaintiff completed an official Charge of Discrimination on January 20, 2004, and filed it with the HCRC and the Equal Employment Opportunity Commission ("EEOC") on February 9, 2004. Plaintiff states that she later received a right to sue letter and commenced the subject action with this Court. Complaint ¶ 32.

## STANDARD

### Motion for Summary Judgment

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file,

9

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal citation omitted).[2] Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Miller v. Glenn Miller Productions, 454 F.3d 975, 987 (9th Cir. 2006). The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court--that there is an absence of evidence to

---

[2]Disputes as to immaterial issues of fact do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.[3/]

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. <u>See</u> <u>Celotex</u>, 477 U.S. 323; <u>Matsushita Elec.</u>, 475 U.S. at 586; <u>Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).[4/]  The nonmoving party must instead set forth "significant probative evidence" in support of its position.  <u>T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.  <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

When evaluating a motion for summary judgment, the

---

[3/]When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. <u>Miller</u>, 454 F.3d at 987 (quoting <u>C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000)). When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. <u>Miller</u>, 454 F.3d at 987.

[4/]Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002); <u>see also</u> <u>T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See T.W. Elec. Serv., 809 F.2d at 630-31.[5/] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986).

## DISCUSSION

Plaintiff asserts six causes of action against Defendants in her Complaint. The Maui Bulletin now moves for summary judgment on each claim, and Migita joins the Motion. Plaintiff's six claims are for (I) Sexual Harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 (2005); (II) Retaliation under Title VII; (III) a violation of 42 U.S.C. § 1981; (IV) Punitive Damages; (V) violations of the State of Hawaii Fair Employment Act, Hawaii Revised Statutes ("H.R.S.") §§ 368 and 378; and (VI) Intentional Infliction of Emotional Distress.

## I.   Counts I and II - Title VII Claims

Plaintiff alleges discrimination in the forms of sexual harassment and retaliation against the Maui Bulletin and Migita pursuant to Title VII. The Court first GRANTS summary judgment

---

[5/]At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Bator v. State of Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994).

for Migita as to Counts I and II.   Title VII prohibits

discriminatory practices by an "employer," but does not impose

liability on individual employees, including managers and

supervisors.   <u>See</u> 42 U.S.C. § 2000e-2; <u>see also</u> <u>Pink v. Modoc</u>

<u>Indian Health Project, Inc.</u>, 157 F.3d 1185, 1189 (9th Cir. 1998);

<u>Miller v. Maxwell's Int'l Inc.</u>, 991 F.2d 583, 587-88 (9th Cir.

1993); <u>Black v. City & County of Honolulu</u>, 112 F. Supp. 2d 1041,

1048 (D. Haw. 2000).   Next, the Court addresses the Title VII

claims asserted against the Maui Bulletin.

The Maui Bulletin initially argued that Plaintiff's

sexual harassment and retaliation claims are time barred because

she did not comply with the statutory filing requirements.[6]

Title VII specifies guidelines for filing a timely complaint.

> In a State that has an entity with the authority to
> grant or seek relief with respect to the alleged
> unlawful practice, an employee who initially files a
> grievance with that agency must file the charge with
> the EEOC within 300 days of the employment practice; in
> all other States, the charge must be filed within 180
> days.

<u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109,

122 S. Ct. 2061 (2002); 42 U.S.C. § 2000e-5(e).   In Hawaii, the

HCRC is authorized to grant and seek relief for discriminatory

practices.   After initially completing a Pre-Complaint

_____

[6]The Court notes that Defendants did not raise the
timeliness argument in the Reply, nor did they pursue the
argument at the December 4, 2006 hearing.

Questionnaire on November 19, 2003 for the HCRC,[7] Plaintiff simultaneously filed a Charge of Discrimination with both the HCRC and EEOC on February 10, 2004.  The form was originally signed by Plaintiff on January 20, 2004, but is stamped "FEB 09 2004" to note the date upon which the complaint was filed. Opposition CSF, Ex. 2.   The statute clearly states that charges must be "filed . . . within three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  Therefore, Plaintiff may only pursue claims under Title VII for unlawful employment practices that occurred after April 15, 2003, 300 days before February 10, 2004.  The conduct that comprises the Title VII claims of sexual harassment and retaliation claims is distinct, thus the deadline must be applied separately to the two claims.

**A.    Sexual Harassment**

Title VII makes it unlawful for an employer to ". . . discharge an individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of the individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  While not explicitly

_____

[7]There is no evidence in the record to show that the Pre-Complaint Questionnaire was also filed with the EEOC.  In addition, the questionnaire specifically asks the complainant "Was a complaint concerning this problem filed with the U.S. Equal Employment Opportunity Commission (EEOC)?", to which she responded "No."  Opposition CSF, Ex. 2 (Pre-Complaint Questionnaire).

identified in the text of the statute, courts have concluded that "sexual harassment in the form of a hostile work environment constitutes sex discrimination." <u>Nichols v. Azteca Restaurant Enterprises, Inc.</u>, 256 F.3d 864, 871 (9th Cir. 2001) (citing <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 64, 106 S. Ct. 2399 (1986)).

Plaintiff alleges that she was sexually harassed in the form of a hostile work environment.[8/]  For the purpose of assessing filing deadlines, the Supreme Court has drawn a distinction between a sequence of related discrete acts of harassment and a hostile work environment charge. <u>Morgan</u>, 536 U.S. at 113-119, 122 S. Ct. 2061. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." <u>Id.</u> at 114. For each discrete act, a new clock is started and a timely complaint must be filed.  <u>Id.</u>  Hostile work environment claims are analyzed differently.

---

[8/]Sexual Harassment claims may also be of the "quid pro quo" variety.  A "quid pro quo" claim arises when the employer "explicitly or implicitly condition[s] a job, a job benefit, or the absence of a job detriment, upon [the employee's] acceptance of sexual conduct." <u>Porter v. California Dept. of Corrections</u> 419 F.3d 885, 892 n. 3 (9th Cir. 2005) (citing <u>Heyne v. Caruso</u>, 69 F.3d 1475, 1478 (9th Cir. 1995)).  While Plaintiff generally asserts such a claim in her Complaint, <u>see</u> <u>e.g.</u>, Complaint ¶ 34, neither party casts the sexual harassment claim as a "quid pro quo" claim in their moving papers.  Accordingly, the Court will address the sexual harassment claim as a hostile work environment claim.

A hostile work environment claim "involves repeated conduct . . . occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Morgan, 536 U.S. at 115. "Such claims are based on the cumulative effect of the individual acts." Id. A hostile work environment is comprised of a collection of acts which constitute one "unlawful employment practice." Id. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability." Id. Thus, Plaintiff's sexual harassment claim is only actionable if she can show that the alleged hostile work environment is based on sexual harassment that occurred after April 15, 2003.

To establish a hostile work environment based on sexual harassment, a plaintiff must show that "(1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." Porter v. California Dept. of Corrections, 419 F.3d 885, 892 (9th Cir. 2005) (citing Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003)). Proving that the Maui Bulletin's conduct was sufficiently severe and pervasive requires a showing "that [Plaintiff's] work

16

environment was both subjectively and objectively hostile; that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so." <u>Dominguez-Curry v. Nevada Transp. Dept.</u>, 424 F.3d 1027, 1034 (9th Cir. 2005).

Courts are to consider all circumstances of the employment, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> (citing <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 270-71, 121 S. Ct. 1508 (2001)). "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" <u>Hardage v. CBS Broadcasting, Inc.</u>, 427 F.3d 1177, 1189 (9th Cir. 2005) (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788, 118 S. Ct. 2275 (1998)).

Plaintiff alleges that Migita's harassing conduct, which created a hostile work environment, originated soon after she undertook her employment at the Maui Bulletin in December 2002. Complaint ¶ 6. At first, Plaintiff alleges that Migita made sexual advances, sexual comments, and inappropriately touched her. Plaintiff testified that she put a stop to all private dealings with Migita by the end of March 2003. Motion,

Ex. A, Plaintiff Deposition at 138.  She ended the dining-out reviews and personal training sessions, and stopped answering his private phone calls.  Id. at 137-139.  The egregious comments also came to a halt, the final documented sexual comment occurring in the first week of April 2003.  Motion CSF, Ex. D (Plaintiff's April 23, 2003 notes).

At this point, Plaintiff contends that Migita subjected her to unequal terms of the employment, including: "overscrutinizing [her] work; falsely blaming [her] for losing accounts; interfering with [her] accounts; requiring [her] to get all monies up front; trying to cause [her] to lose business; and requir[ing her] to call in every hour and reprimand[ing her] when [she] was late calling in."  Opposition CSF, Ex. 2 (Charge of Discrimination).

Finally, Plaintiff claims that Migita harassed her on June 30, 2003 when he blocked her entry to work.  Opposition CSF ¶ 3.  In her declaration, Plaintiff states that "[Migita] began harassing me immediately upon my return [on June 30, 2003], I became sure I [] did not need anymore of his harassment, for it created a totally hostile environment for me."  Plaintiff Declaration ¶ 18.  Notably, Plaintiff does not consider this incident to be sexual harassment in her submissions to the HCRC, in which she stated that the sexual harassment ceased on or about May 1, 2003.  See Opposition CSF, Ex. 2 (Charge of Discrimination

18

at 1; Amended Complaint at 31013300090; Pre-Complaint Questionnaire at 31013300078).

While there may be sufficient evidence of a hostile work environment through the first week of April 2003, some of the contributing conduct must have occurred after April 15, 2003 for the claim to have been filed in a timely manner.  The Court finds that it did not, and concludes that the claim is not actionable.

The first required element of a sexual harassment hostile work environment claim is that a plaintiff be "subjected to verbal or physical conduct of a sexual nature."  Porter, 419 F.3d at 892.  Simply, none of the Plaintiff's allegations regarding Defendants' behavior after the first week of April 2003, such as intensified supervision, interference with her accounts, constructive discharge, or the threatening incident on June 30, 2003, are of a sexual nature.[9]  The June 30, 2003 incident did not consist of a verbal exchange or physical touching.  While the conduct may have been threatening or intimidating, there is no evidence to establish that it was of a sexual nature.

The evidence indicates that the lone physical touching incident occurred in March 2003.  Plaintiff testified that she

---

[9]The Court will address later in this Order whether such conduct could constitute retaliation for engaging in a protected activity.

and Migita went to the gym together shortly before she informed

him that she would no longer attend sales training sessions.

Plaintiff Deposition 68:10-16.  She stopped sales training with

Migita in late March 2003.  Id. at 138:15-17.  In addition, there

is no evidence Migita uttered sexually offensive comments to

Plaintiff after the first week of April 2003.[10]

       Based on the available evidence, the Court concludes

that the sexual harassment ceased by the first week of April

2003.  There is not one incident to establish that a hostile work

environment based on sexual harassment existed beyond April 15,

2003.[11]  Accordingly, the Court GRANTS summary judgment for the

Maui Bulletin as to Count I - Sexual Harassment under Title VII.

The Court emphasizes that while the alleged sexual harassment may

_____

[10]The Court recognizes that Plaintiff made conclusory
allegations in her HCRC complaint that the sexual harassment
persisted until May 1, 2003.  She fails to allege any specific
acts subsequent to the first week of April 2003.  In fact, her
deposition and notes indicate that the acts of sexual harassment
and her individual interactions with Migita ceased by the first
week of April 2003.  In as much as counsel for the Maui Bulletin
withdrew his assertion of a bar based on the statute of
limitations at the hearing, the Court will permit Plaintiff to
assert any specific acts of sexual harassment that occurred after
April 15, 2003 and contributed to a hostile work environment.
Should there be such facts, Plaintiff can pursue this argument in
a motion for reconsideration.

[11]In Hardage, for example, the Court found that the alleged
sexual harassment ceased at a specific time, and then addressed
independently whether subsequent retaliation claims were timely
and had merit.  427 F.3d at 1184-85.  See also Manatt v. Bank of
America, N.A., 339 F.3d 792, 798 (9th Cir. 2003) (finding that
alleged racial harassment concluded after a investigatory staff
meeting, and then addressing alleged retaliation separately).

not be actionable, Plaintiff may use the "prior acts as background evidence in support of a timely claim."  <u>Morgan</u>, 536 U.S. at 113, 122 S. Ct. 2061.

**B.   Retaliation**

Plaintiff also seeks relief under Title VII from the Maui Bulletin for retaliation.  Title VII prohibits retaliation against an individual who opposes unlawful discrimination.  42 U.S.C. § 2000e-3(a).  As with sexual harassment, a complainant may seek relief for a discrete act of retaliation or for a series of retaliatory conduct that creates a hostile work environment.  <u>Ray v. Henderson</u>, 217 F.3d 1234, 1244-45 (9th Cir. 2000).  Here, plaintiff appears to pursue both types of claims.

Under Title VII, the same filing deadline applies to the retaliation and sexual harassment claims.  Any discrete act of retaliation that transpired prior to April 15, 2003 is time barred, whereas a hostile work environment claim is actionable only if an act contributing to the claim fell within the filing period, or after April 15, 2003.  <u>See</u> <u>Morgan</u>, 536 U.S. at 117, 122 S. Ct. 2061.

Plaintiffs may utilize the McDonnell Douglas burden shifting framework for retaliation claims.  <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1035 (9th Cir. 2006) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973)).  First, a plaintiff must establish a prima facie

21

case of retaliation by offering proof: (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) a causal link exists between the protected activity and the adverse action. <u>Hardage</u>, 427 F.3d at 1188; <u>Villiarimo v. Aloha Island Air</u>, 281 F.3d 1054, 1064 (9th Cir. 2002).

Once an individual establishes a prima facie case of retaliation, "the burden shifts to [the employer] to articulate a legitimate, non-discriminatory reason for the adverse employment action." <u>Stegall v. Citadel Broadcasting Co.</u>, 350 F.3d 1061, 1066 (9th Cir. 2003) (citing <u>Manatt v. Bank of America, N.A.</u>, 339 F.3d 792, 800 (9th Cir. 2003)). If the employer articulates such a reason, the employee "bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." <u>Stegall</u>, 350 F.3d at 1066. The Court will first address some of Plaintiff's allegations of discrete retaliatory acts, then the claim for a constructive discharge, and finally her claim that she was subjected to a hostile work environment based on retaliation.

### 1. **Discrete Acts**

The Maui Bulletin first assumed for the purpose of this Motion that Plaintiff engaged in protected activity either when she complained to Migita or when she made her complaint to Kathleen Piimauna, the Maui Bulletin's Regional Accounting

22

Manager, on June 3, 2003.  Motion at 18.  Then, in its Reply, the
Maui Bulletin argues that Plaintiff cannot prove that she engaged
in any protected activity.  Reply at 7.  At the outset, the
argument must be disregarded because it is raised for the first
time in the reply brief.  "Any arguments raised for the first
time in the reply shall be disregarded."  Local Rule 7.4; see
e.g., Fielder v. Gehring, 110 F. Supp. 2d 1312, 1319 (D. Haw.
2000).

       Even if the Court were to consider the Maui Bulletin's
argument, it is insufficient to merit granting summary judgment.
The Maui Bulletin cites one unpublished Sixth Circuit opinion
that supports the proposition that participating in an
investigation does not necessarily constitute protected activity.
See Crawford v. Metropolitan Government of Nashville, 2006 WL
3307507, *3 (6th Cir. Nov. 14, 2006).  However, this conclusion
is inapposite to the text of the statute.  Furthermore,
Plaintiff's conduct goes well beyond simply participating in an
investigation.

       Title VII makes it unlawful for "an employer to
discriminate against any of his employees . . . because [s]he has
opposed any practice made an unlawful employment practice by this
subchapter, or because [s]he has made a charge, testified,
assisted, or participated in any manner in an investigation,
proceeding, or hearing under this subchapter."  42 U.S.C. §

2000e-3(a).  "Making an informal complaint to a supervisor is also a protected activity."  <u>Ray</u>, 217 F.3d at 1240 n. 3 (citing <u>Equal Employment Opportunity Commission v. Hacienda Hotel</u>, 881 F.2d 1504, 1514 (9th Cir. 1989)).

At the hearing, Plaintiff raised that she first engaged in protected activity when she complained to Migita, her supervisor, about his conduct, and the Court concurs.  Next, there is evidence, in the form of Ayin Adams' letter and Kathleen Piimauna's declaration, that Plaintiff complained about sexual harassment to Adams, a fellow employee.  Opposition CSF, Ex. 1.  This complaint ultimately spurred the investigation into Migita's conduct that led to his suspension.  Then, at the meeting with Piimauna on June 3, 2003, Plaintiff did not just answer questions about Migita, but she also presented handwritten notes detailing Migita's conduct.  The Court finds that Plaintiff engaged in protected activity on at least two occasions.

Plaintiff alleges that she suffered numerous adverse employment actions as a direct result of engaging in protected activity.  "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity."  <u>Ray</u>, 217 F.3d at 1243.  "For example, retaliatory harassment can be an adverse employment action giving rise to a retaliation claim."  <u>Elvig v. Calvin Presbyterian Church</u>, 375 F.3d 951, 965 (9th Cir. 2004) (citing

24

Ray, 217 F.3d at 1242-45 & n. 5).  Also, "[i]f shown,

constructive discharge is an adverse employment action."  Jordan

v. Clark, 847 F.2d 1368, 1377 n. 10 (9th Cir. 1988).

     The Court finds that the following allegations of

discrete retaliatory acts are insufficient to survive summary

judgment.  First, Plaintiff claims that Migita allowed another

sales associate to solicit her clients.  However, Plaintiff

testified that the Maui Bulletin addressed her concerns and this

problem was resolved by March 3, 2003, well before April 15,

2003.  Motion, Ex. C, Plaintiff Deposition at 70.  This discrete

act of alleged retaliation is barred by the timing of Plaintiff's

filing with the EEOC.

     Next, Plaintiff alleges that human resources wrongly

charged her $600 for her daughter's health insurance.  Complaint

¶ 17.  The evidence shows that Plaintiff complained to Adams

about this deduction in April 2003.  At that time, only Migita

was aware of Plaintiff's protected activity and there is no

evidence that Migita was involved in the payroll deductions.  The

Court finds no causal connection exists between this conduct and

her complaints about sexual harassment.

     Plaintiff also alleges that a memorandum instructing

employees to turn in weekly sales reports, dated April 22, 2003,

constituted an adverse employment action.  Motion CSF, Ex. G.

However, the Maui Bulletin explains that this memorandum was a

general reminder distributed to all sales employees.  Plaintiff has offered no evidence to show that Plaintiff's non-discriminatory explanation lacks credibility.  Similarly, Plaintiff offers no evidence to rebut the Maui Bulletin's explanation that it is company policy not to pay commissions to former employees, whether they resign or are terminated.  Motion CSF, Piimauna Declaration ¶ 8.  Thus, Plaintiff's claims for retaliation based on unpaid commissions and the sales report memorandum must fail.

The Court grants summary judgment for the Maui Bulletin regarding the aforementioned discrete retaliatory acts.  Next, the Court considers one additional retaliatory act, a constructive discharge.[12]

### 2.   Constructive Discharge

To show a constructive discharge, a plaintiff must establish that "a reasonable person in [her] position would have

_____

[12]Plaintiff alleges retaliation in the Complaint, but does not specifically allege a constructive discharge.  Plaintiff alleged a constructive discharge in her HCRC complaint. Opposition CSF, Ex. 2 (Charge of Discrimination).  Plaintiff makes passing references to a constructive discharge in her Opposition and Declaration.  Opposition at 26-27; Plaintiff Declaration ¶ 18.  The Federal Rules of Civil Procedure require notice pleading, which consists of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under the liberal pleading standard adopted by the Ninth Circuit, this Court considers Plaintiff's charge of constructive discharge adequately pled.  See Allied Signal, Inc. v. City of Phoenix, 182 F.3d 692, 696 (9th Cir. 1999).

felt that [she] was forced to quit because of intolerable and discriminatory working conditions." Hardage, 427 F.3d at 1184 (citing Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994)).

Plaintiff states that she was "forced to resign." Plaintiff Declaration ¶ 20. She further alleges that she later received unemployment benefits because the "State employment office" determined that she had "sufficient cause for quitting."[13] See Plaintiff Declaration ¶ 47; Opposition CSF, Ex. 6 at 31013300081. The Ninth Circuit has previously held that when an individual resigns more than three months after harassment ceases, such harassment is not a basis for finding a constructive discharge. Hardage, 427 F.3d at 1184; Montero v. Agco Corp., 192 F.3d 856, 861 (9th Cir. 1999). Here, three months passed between the final alleged act of sexual harassment and when she resigned. However, Plaintiff's claim of intolerable working conditions is also based on subsequent acts of retaliation. Even though some of the alleged retaliatory acts are not independently actionable, as analyzed above, additional alleged retaliatory conduct supports Plaintiff's constructive discharge claim.

---

[13]The parties have not addressed the significance, if any, a determination by a state agency that Plaintiff had "sufficient cause for quitting" might have with respect to the present case and whether the matter should be admissible at trial.

Once Plaintiff ended her personal interactions with Migita, she claims that he continually interfered with her employment over the next three months.  Plaintiff testified that Migita instituted a policy for all sales people to call him on an hourly basis.  Motion, Ex. C at 63.  While the Maui Bulletin attempts to justify this policy by explaining that other employees were also required to call Migita, Plaintiff's testimony indicates that the policy did not apply equally to all employees.  Id. at 63-64.  There is a question of fact as to whether Plaintiff was singled out to call Migita on an hourly basis.  Plaintiff further alleges that Migita interfered with her accounts, including acts such as calling a client to insult the client's graphic designer, or refusing to run an advertisement insert that Plaintiff had promised a client.  Plaintiff Declaration ¶ 49-52; Motion, Ex. C at 42-45.  While the Maui Bulletin explains that there was no one available at the office to run the insert, Plaintiff claims that the insert was at the office two weeks in advance.  Plaintiff Declaration ¶ 12.

Plaintiff also alleges that Migita engaged in a practice of inequitable account distribution.  Plaintiff Declaration ¶ 17.  Plaintiff states that Migita had complete control over account distribution, and that when Adams resigned, her accounts were disproportionately distributed to other sales representatives.  Defendant offers no justification or

28

explanation to refute this claim.

Finally, when Plaintiff returned to work from two weeks of leave, she encountered Migita allegedly blocking her entrance to the Maui Bulletin in a threatening manner.  She was not aware that he had been recently suspended and this intimidation allegedly was the ultimate intolerable act that forced her to resign.

The Court finds that there is a question of fact whether a reasonable person in Plaintiff's position who was subjected to approximately three months of repeated verbal sexual harassment and one incident of physical sexual harassment,[14/] then suffered retaliatory acts that impacted her job performance sufficient to require medical attention and a leave of absence, only to be confronted by her harasser upon her return, may believe that the working conditions were intolerable.  A genuine issue of material fact exists as to whether Plaintiff was constructively discharged.

In conclusion, the Court denies the Maui Bulletin's motion for summary judgment as it relates to Plaintiff's claim for retaliation in the form of a constructive discharge.  The Court next considers Plaintiff's claim for retaliation in the

---

[14/]While the allegations of sexual harassment may be time barred, the Court can still consider the conduct "as background evidence in support of a timely claim."  Morgan, 536 U.S. at 113, 122 S. Ct. 2061.

form of a hostile work environment.

   **3.   Hostile Work Environment**

        A hostile work environment can be the basis for a
retaliation claim if the harassment is "sufficiently severe or
pervasive to alter the conditions of the victim's employment and
create an abusive working environment." Ray, 217 F.3d at 1245
(citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.
Ct. 367 (1993)).  An employer can be vicariously liable for an
actionable hostile work environment created by a supervisor with
immediate authority over the employee.  Hardage, 427 F.3d at
1183.  In Ray, the court found that the plaintiff had provided
sufficient evidence to raise a genuine issue of material fact as
to whether he had been subjected to a hostile work environment
based on retaliation.  217 F.3d at 1246; see also Black v. City
and County of Honolulu, 112 F. Supp. 2d 1041, 1051-52 (D. Haw.
2000) (concluding that evidence of repeated disruptive phone
calls, a threatening note, 24-hour surveillance, releasing
delicate information to the media, and wire tapping of a pager
amounted to sufficient evidence to raise a genuine issue of
material fact regarding a retaliatory hostile work environment).
The Ray court found sufficient evidence in retaliatory verbal
abuse that lasted for more than a year and a half, numerous
pranks, and false accusations of misconduct.  217 F.3d at 1245.

        Here, Plaintiff alleges that a pattern of retaliatory

conduct constitutes a hostile work environment.  While some of the discrete acts of retaliation fail as claims on their own, Plaintiff's allegations also include Migita's interference with her accounts, unreasonable and disparate monitoring of her whereabouts, inequitable account distribution, a threatening confrontation with Migita, and a constructive discharge.  The Court finds that there is a genuine issue of material fact as to whether this pattern of conduct is sufficiently severe and pervasive as to have altered Plaintiff's working conditions.

In conclusion, the Court GRANTS in part and DENIES in part the Maui Bulletin's motion for summary judgment as to Count II - Title VII Retaliation.  Plaintiff may only continue to pursue her claims of a constructive discharge and retaliatory hostile work environment.  Next, the Court considers Plaintiff's parallel state discrimination claims.

## II.  Count V - State of Hawaii Fair Employment Act

In Count V, Plaintiff asserts her discrimination claims against the Maui Bulletin and Migita pursuant to Sections 368 and 378 of the Hawaii Revised Statutes.  H.R.S. § 368 creates the HCRC but does not create a specific cause of action.  H.R.S. § 378-2 ("Section 378-2") prohibits sexual harassment and retaliation in the workplace.  Plaintiff's state law claims rest on the same underlying facts as her Title VII claims and the elements of the claims pursued under state law are similar for

sexual harassment claims and identical for retaliation claims.

First, the Court considers Plaintiff's assertion that individual

liability exists under state law.[15/]

## A.    Individual Liability

Section 378-2 prohibits discrimination as follows:

(1) Because of race, sex, sexual orientation, age,
religion, color, ancestry, disability, marital status,
or arrest and court record:

> (A) For any employer to refuse to hire or employ
> or to bar or discharge from employment, or
> otherwise to discriminate against any individual
> in compensation or in the terms, conditions, or
> privileges of employment; . . .

(2) For any employer, labor organization, or employment
agency to discharge, expel, or otherwise discriminate
against any individual because the individual has
opposed any practice forbidden by this part or has
filed a complaint, testified, or assisted in any
proceeding respecting the discriminatory practices
prohibited under this part;

(3) For any person whether an employer, employee, or
not, to aid, abet, incite, compel, or coerce the doing
of any of the discriminatory practices forbidden by
this part, or attempt to do so.

H.R.S. § 378-2(1)-(3).  It is evident that Sections 378-2(1)(A)

and 378-2(2) apply to an "employer" and that 378-2(3) applies to

any person whether he is "an employer, employee, or not."  There

is no doubt that the law recognizes individual liability for

aiding, abetting, inciting, compelling, or coercing a

---

[15/]Migita did not present this issue to the Court, but his
position, as stated at the hearing, is that no such individual
liability exists.

discriminatory practice under section 378-2(3).

Whether an individual may be directly liable for conduct prohibited by Sections 378-2(1) and 378-2(2) hinges on the interpretation of the word "employer."  Presently, no state law precedent speaks directly to the issue, and there is a split among the District of Hawaii judges as to whether an individual can be liable as an agent of an employer under Sections 378-2(1) or 378-2(2).  In recent years, Judge Samuel King, this Court, and Judge J. Michael Seabright have interpreted the term "employer" to include individuals without employees and permitted claims against such individuals to be pursued.  See Black v. City and County of Honolulu, 112 F. Supp. 2d 1041, 1056-57 (D. Haw. 2000); Harrell v. The Honolulu Medical Group, Inc., Civ. No. 99-00924 ACK at 20-23 (D. Haw. October 19, 2000); Sherez v. Department of Education, 396 F. Supp. 2d 1138, 1145-48 (D. Haw. 2005).  On the other hand, Judge David Ezra and Judge Susan Mollway concluded that liability does not extend to individuals pursuant to Sections 378-2(1) or 378-2(2).  See White v. Pacific Media Group, Inc., 322 F. Supp. 2d 1101, 1114-15 (D. Haw. 2004); Maizner v. Hawaii Department of Education, 405 F. Supp. 2d 1225, 1232-39 (D. Haw. 2005).

The Court begins its analysis with an examination of the plain language of the statute.  The statute defines the term "employer" as: "any person, including the State or any of its

political subdivisions and any agent of such person, having one or more employees, but shall not include the United States." H.R.S. § 378-1.  Courts have identified two varying interpretations of this definition.  In one interpretation, the statute is construed broadly to define an "employer" to include "any agent" of the employer as long as the employer has one or more employees.  Judge Seabright concluded that this "plain reading of the statute strongly suggests that an individual agent can be held liable as an employer for purposes of § 378-2." Sherez, 396 F. Supp. 2d at 1146.

An alternative interpretation, which is thoroughly addressed by Judge Mollway, concludes that the phrase "having one or more employees" restrictively modifies "any person," thus limiting the breadth of the definition of an "employer." Maizner, 405 F. Supp. 2d at 1235.  By restricting the definition of employer to those persons "having one or more employee," Judge Mollway forecloses the possibility that an individual employee could be liable under Sections 378-2(1) or 378-2(2).  Id.  Under this reading, the inclusive phrase "any agent of such person" would only apply to those agents that also have "one or more employees."  Id. at 1235-36.

This Court is persuaded by the broader and more direct reading of the statute that includes individual agents without employees as employers.  This interpretation is consistent with

Section 378-2(3), which creates liability for any person that aids, abets, or incites discrimination.  The Court believes that this provision is indicative of a legislative intent to expand the categories of persons that could be held liable for discrimination, not limit them.  As Judge Seabright reasoned, "it would be hard to imagine that the Hawaii legislature meant to impose liability on small employers and on individuals who aid and abet discrimination, yet at the same time meant to immunize the individual agents who actually engage in the unlawful discrimination."  Sherez, 396 F. Supp. 2d at 1147.

It is also useful to examine the legislative history of the definition of "employer."  The term "employer" was originally defined by Act 44 of the 1964 Hawaii Session Laws, 1964 Haw. Sess. Laws 44 § 2A ("Act 44"), as "any person having one or more persons in his employment, and includes any person acting as an agent of an employer, directly or indirectly."  It is clear from the original definition that the phrase "having one or more persons" does not modify or limit the term "agent."  Rather, the term "employer" expansively includes "any person" that is an agent.  When the definition was amended to its current form in 1981, both the House and Senate Standing Committee Reports explained that the purpose of the amendment was solely to extend liability to state and county governments.  There is no mention of an intent to suddenly immunize individual agents from

35

liability.  See Comm. Rep. No. 549, Reg. Sess. (House Journal 1981); Comm. Rep. No. 653, Reg. Sess. (Senate Journal 1981). After combing through the entire legislative history of this statute, the Court finds no indication that the Hawaii legislature ever intended to exclude individual agents from the definition of the term "employer."

        Furthermore, a pertinent Hawaii state ruling supports the conclusion that an individual without employees may be liable as an agent of his employer pursuant to Section 378(2).  In Steinberg v. Hoshijo, the Hawaii Supreme Court upheld the HCRC's finding that a doctor sexually harassed a medical assistant in violation of H.R.S. 378-2(1)(A).  88 Haw. 10, 17-19 (1998). Significantly, the charge was not pursued under the aid and abet provision.  The court appears to assume, as did the parties, that the defendant doctor was "an agent of the Clinic and therefore an 'employer' as defined by HRS § 378-1."  Id. at 18 n. 10.  As noted previously by this Court and Judge King, this conclusion comports with other HCRC findings that have held individual employees jointly and severally liable for damages arising out of harassment.  Harrell, Civ. No. 99-00924 ACK at 22; Black, 112 F. Supp. 2d at 1056-57 (citing Tseu v. Cederquist, Inc., No. 95-001-E-R-S (HCRC June 28, 1996; Santos v. Niimi, No. 92-001-E-SH (HCRC Jan. 25, 1993)).

        Finally, the Court considers federal case law in the

absence of unearthing Hawaii state law precedent directly on point.  See Furukawa v. Honolulu Zoological Society, 85 Haw. 7, 13 (1997).  However, "federal employment discrimination authority is not necessarily persuasive, particularly where a state's statutory provision differs in relevant detail."  Id.  As previously discussed, Title VII does not provide for individual liability.  Pink, 157 F.3d at 1189.  The Court finds, in agreement with Judge Seabright's analysis in Sherez, that there are two relevant distinctions between Title VII and H.R.S. § 378 that weigh against the adoption of a restrictive reading of the state statute.  396 F. Supp. 2d at 1147-48.  First, Title VII imposes liability only on employers with fifteen or more employees, whereas Section 378 applies to employers with one or more employees.  Second, Section 378-2(3) expands liability to include all individuals that aid, abet, or incite discriminatory practices.  Title VII contains no such expansive provision.

For all of these reasons, the Court holds that an individual without employees may be liable for discriminatory conduct pursuant to H.R.S. § 378-2(1) or retaliatory conduct pursuant to H.R.S. § 378-2(2) as an agent of his employer.  In addition, the individual may be liable for aiding, abetting, or inciting discriminatory practices pursuant to H.R.S. § 378-2(3). In this case, Plaintiff offers no evidence that Migita aided, abetted, or incited discriminatory practices, but instead asserts

37

that he committed the acts directly.   Therefore, the Court construes Plaintiff's claims against Migita to be brought pursuant to Section 378-2(1) and 378-2(2), and not Section 378-2(3).   Having concluded that Migita may be individually liable as an agent of the Maui Bulletin, the Court will now address Plaintiff's state sexual harassment and retaliation claims against the Maui Bulletin and Migita.

**B.   Sexual Harassment**

Generally, complaints alleging discrimination under state law must be filed with the HCRC within 180 days after the date: "(1) [u]pon which the alleged unlawful discriminatory practice occurred; or (2) [o]f the last occurrence in a pattern of ongoing discriminatory practice."   H.R.S. § 368-11(c). However, the Hawaii legislature carved out an exception to the filing requirement for sexual harassment claims.   In 1992, H.R.S. § 378-3 was amended to include the following exception to Chapter 378:

> Nothing in this part shall be deemed to:
>
> (10) Preclude any employee from bringing a civil action for sexual harassment or sexual assault and infliction of emotional distress or invasion or privacy related thereto; provided that notwithstanding section 368-12, the commission shall issue a right to sue on a complaint filed with the commission if it determines that a civil action alleging similar facts has been filed in circuit court.

H.R.S. § 378-3(10).   The Supreme Court explained that this amendment was a response to "concerns that victims of sexual

38

harassment were often so traumatized by the occurrence that they might fail to file with the commission within 180 days." Nelson v. University of Hawaii, 97 Haw. 376, 394 (2001) (citing Furukawa, 85 Haw. at 19).

The amendment "excepts victims of sexual harassment and sexual assault from having to file discrimination complaints with the HCRC under HRS § 378-4 (1993)." Id. The practical effect of the amendment was recorded in the Senate Committee Report: "[w]ithin 180 days after the alleged injury, jurisdiction rests primarily with the Hawaii Civil Rights Commission; however, after 180 days but within the tort statute of limitations, the employee may file a civil action in a court of competent jurisdiction whether or not notice of right to sue has been issued by the Commission pursuant to Chapter 368." Comm. Rep. No. 2588, Reg. Sess. (Senate Journal 1992). Accordingly, plaintiffs alleging sexual harassment or assault are provided two avenues for filing complaints. Here, Plaintiff failed to meet the filing deadline for either option.

First, Plaintiff neglected to file a timely complaint with the HCRC. Plaintiff completed a Pre-Complaint Questionnaire with the HCRC on November 19, 2003. Opposition CSF, Ex. 2. There is no specific state law precedent as to whether a pre-complaint questionnaire constitutes a complaint as required by H.R.S. § 368-11(c). The HCRC's pre-complaint questionnaire is

39

modeled after the statute's requirements for a complaint, which instruct that a complaint be in writing and contain "the name and address of the person or party alleged to have committed the unlawful discriminatory practice complained of, set forth the particulars thereof, and contain other information as may be required by the commission."   H.R.S. 368-11(a).

In addition, the Ninth Circuit has held that an intake questionnaire submitted to the EEOC is sufficient to constitute a charge of discrimination for the purposes of satisfying the Title VII filing deadline.  Casavantes v. California State University, Sacramento, 732 F.2d 1441, 1443 (9th Cir. 1984).  At the December 4, 2006 hearing, in accord with the Ninth Circuit's ruling, the Maui Bulletin stated that it does not dispute that Plaintiff's Pre-Complaint Questionnaire could qualify as a complaint.[16/]  The Court finds that Plaintiff's submission of the Pre-Complaint Questionnaire to the HCRC on November 19, 2003 constituted the filing of a complaint for the purposes of calculating the state filing deadlines.

---

[16/]It is also significant that the Hawaii Supreme Court has previously considered the pre-complaint questionnaire in order to assess whether a plaintiff properly exhausted her administrative remedies.  See French v. Hawaii Pizza Hut, Inc., 105 Haw. 462, 476-77 (2004) (determining that an addendum to the pre-complaint questionnaire supported a conclusion that the complainant did not initially assert a sex discrimination claim); see also B.K.B. v. Maui Police Department, 276 F.3d 1091, 1101-02 (9th Cir. 2002) (in certain circumstances, "the plaintiff may present her pre-complaint questionnaire as evidence that her claim for relief was properly exhausted.").

When Plaintiff filed her complaint with the HCRC on November 19, 2003, she ensured that conduct that occurred within 180 days, or by May 23, 2003, is actionable.  See H.R.S. § 368-11(c).  As held above, the Court finds that the alleged sexual harassment ceased by the first week of April 2003.  See discussion supra Part I.A..  Similar to Title VII, the first element of a sexual harassment claim requires that the complainant "was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct or visual forms of harassment of a sexual nature."  Arquero v. Hilton Hawaiian Village LLC, 104 Haw. 423, 428 (2004).  None of the alleged conduct that occurred after May 23, 2003 was of a sexual nature, therefore Plaintiff's complaint for state law sexual harassment was not filed with the HCRC in a timely manner.

Second, Plaintiff failed to initiate a civil action with this Court within the tort statute of limitations, which is provided by H.R.S. § 657-7 as follows: "actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of the action accrued."  Plaintiff commenced her civil lawsuit on November 7, 2005.  All sexual harassment ended by the beginning of April 2003, more than two years before the filing of Plaintiff's civil complaint.  Plaintiff did not meet the statutory filing deadline pursuant to Chapter 378 or the tort statute of limitations for

her state sexual harassment claim.

Therefore, the Court finds that Plaintiff's sexual harassment claim against both Migita and the Maui Bulletin are not actionable.  The Court GRANTS summary judgment for both the Maui Bulletin and Migita regarding Plaintiff's state law sexual harassment claim brought pursuant to H.R.S. § 378-2.

## C.    Retaliation

As stated, complaints alleging discrimination under state law must be filed with the HCRC within 180 days after the date: "(1) [u]pon which the alleged unlawful discriminatory practice occurred; or (2) [o]f the last occurrence in a pattern of ongoing discriminatory practice."  H.R.S. § 368-11(c).  As will be discussed, many of Plaintiff's state law retaliation claims fall within the Chapter 378 statutory filing deadline.

To establish a prima facie case of retaliation under H.R.S. § 378-2(2), a plaintiff must meet the same elements as are required for Title VII.  The plaintiff must show that (1) she reported, complained of, or testified about a discriminatory practice; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the employment action.  Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 100 Haw. 149, 162 (2002) (citing Schefke v. Reliable Collection Agency, Ltd., 96 Haw. 408, 426 (2001)).  The Hawaii Supreme Court specifically stated that the prima facie

42

cases under Title VII and H.R.S. 378-2(2) are analogous. <u>Gonsalves</u>, 100 Haw. at 162.

In this Order, the Court holds that claims for a constructive discharge and retaliatory hostile work environment are actionable under Title VII.  <u>See</u> discussion <u>supra</u> Part I.B.. The constructive discharge and conduct contributing to the hostile work environment occurred after May 23, 2003, so the claims are not time barred by state law.  As the analysis of Title VII retaliation claims and state law retaliation claims are the same, the claims are also viable under state law.  In addition, these retaliation claims are actionable against Migita individually.  Plaintiff alleges that Migita was responsible for reassigning clients, interfering with her accounts, committing the threatening incident on June 30, 2003, and playing a significant role in creating the intolerable working conditions that led to her constructive discharge.

The Court GRANTS in part and DENIES in part Defendants' motion for summary judgment as to Count V - State of Hawaii Fair Employment Act for retaliation.  Plaintiff may pursue the same retaliation claims against the Maui Bulletin and Migita under state law that she may pursue under Title VII.

**III. <u>Count III - Violation of 42 U.S.C. § 1981</u>**

42 U.S.C.A. § 1981(a) ("Section 1981") provides:

> All persons within the jurisdiction of the United
> States shall have the same right in every State and

> Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security of
> persons and property as is enjoyed by white citizens,
> and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every
> kind, and to no other.

Section 1981 is designed to prevent all racial discrimination in

the making of both public and private contracts.  <u>Karim-Panahi v.</u>

<u>Los Angeles Police Dept.</u>, 839 F.2d 621, 625 (9th Cir. 1988).

Section 1981 provides a remedy for discrimination based only on

race, not sex.  <u>Lowe v. City of Monrovia</u>, 775 F.2d 998, 1010 (9th

Cir. 1985) (citing <u>Shah v. Mount Zion Hospital and Medical</u>

<u>Center</u>, 642 F.2d 268, 272 n. 4 (9th Cir. 1981)); <u>see</u> <u>also</u> <u>Runyon</u>

<u>v. McCrary</u>, 427 U.S. 160, 167, 96 S. Ct. 2586 (1976)("They do not

present any question of the right of a private school to limit

its student body to boys, to girls, or to adherents of a

particular religious faith, since 42 U.S.C. § 1981 is in no way

addressed to such categories of selectivity.")

At no point throughout Plaintiff's Complaint does she

allege that she was discriminated against because of her race.

In the paragraphs that specifically support Count III – Violation

of 42 U.S.C. § 1981, Plaintiff makes allegations based solely on

sex discrimination.  Complaint ¶¶ 38-40.  For the first time, on

the final page of the Opposition, Plaintiff refers to racial

discrimination, stating "[t]he Japanese boss favored Japanese

male employees and that policy harmed the Caucasian female

Plaintiff on this job." Opposition at 30; see also Plaintiff

Declaration ¶ 59. However, this allegation directly contradicts

Plaintiff's deposition testimony on August 15, 2006. The

following excerpt from Plaintiff's deposition clarifies that she

does not believe that she was discriminated against based on her

race.

> Q. You are not claiming that he engaged in improper
> behavior towards you, because of your race, are
> you?
> A. My race, no.
> Q. You are not claiming that anyone at the Maui
> Bulletin discriminated against you, because of
> your race, are you?
> A. Because I'm Caucasian?
> Q. Correct.
> A. No.

Motion CSF, Ex. C. (Plaintiff Deposition, Vol II) at 37:8-17.

From this testimony, it is apparent that Plaintiff has

no claims for racial discrimination against Defendants. There is

also no evidence on the record to support such a claim. She also

did not plead racial discrimination in her Complaint. As Section

1981 governs race discrimination, and not sex discrimination, the

Court GRANTS summary judgment for Defendants on Count III.

## IV.   Count VI - Intentional Infliction of Emotional Distress

The Court applies Hawaii limitation periods to

Plaintiff's intentional infliction of emotional distress claim

("IIED"). Pursuant to H.R.S. § 657-7, the Hawaii tort statute of

limitations is two years. This limitation period applies to

Plaintiff's IIED claim. Linville v. State of Hawaii, 874 F.

45

Supp. 1095, 1104 (D. Haw. 1994); C & W Const. Co. v. Brotherhood of Carpenters and Joiners of America, Local 745, AFL-CIO, 687 F. Supp. 1453, 1460 (D. Haw. 1988).  Plaintiff filed her claims with this Court on November 7, 2005.  The final alleged tortious act occurred on June 30, 2003, when Plaintiff resigned from the Maui Bulletin.  There is no evidence of tortious conduct that could give rise to an IIED claim within two years of the filing of the Complaint with this Court.

In addition, parallel avenues of relief are generally not tolled by a Title VII administrative remedy, even if the claims are based on the same facts and directed toward the same ends.  Linville, 874 F. Supp. at 1105 (citing Johnson v. Railway Express Agency, 421 U.S. 454, 467, 95 S. Ct. 1716 (1975); Harris v. Alumax Mill Products, Inc., 897 F.2d 400, 404 (9th Cir. 1990); cf. Salgado v. Atlantic Richfield Co., 823 F.2d 1322, 1325 (9th Cir. 1987) (state claims were tolled by Title VII proceeding where procedures and remedies were wholly integrated and related and state agency deferred its investigation to the EEOC)).  The United States Supreme Court concluded that Congress did not intend Title VII proceedings to delay independent avenues of redress.  Linville, 874 F. Supp. at 1105 (citing Johnson, 421 U.S. at 461, 95 S. Ct. 1716).  When a plaintiff fails to timely file claims that are separate, distinct, and independent from her Title VII claims, those claims are barred.

Plaintiff's IIED claim is separate, distinct, and independent from her Title VII claims.  Administrative proceedings are not a prerequisite to Plaintiff's filing of an IIED claim in this Court.  Plaintiff has not demonstrated that the procedures and remedies of this claim is wholly integrated with discrimination procedures and remedies under Title VII. Thus, the charge Plaintiff filed with the EEOC did not toll the statute of limitations for the IIED claim.

Similarly, the Court finds that the HCRC charge does not toll the statute of limitations for the IIED claim.  As neither party has addressed this point and the Court has not discovered related Hawaii state law precedent, it is again appropriate to consider federal law.  See Furukawa, 85 Haw. at 13.  Thus, the Court considers whether the administrative process outlined by Chapter 378 may have been intended to delay independent avenues of redress for IIED claims.

As previously discussed, the Hawaii legislature made it clear that plaintiffs do not have to file sexual harassment claims with the HCRC.  It logically follows that IIED claims that are related to sexual harassment claims need not be pursued in an administrative proceeding.  The IIED claim is also distinct and independent from the retaliation claims.  Plaintiff has not demonstrated the procedures and remedies for an IIED claim are integrated with those for Chapter 378 retaliation claims.

47

For these reasons, the Court concludes that Plaintiff neglected to file her IIED claim against Defendants within the two year tort statute of limitations.  The Court GRANTS Defendants' motion for summary judgment as to Count VI.

## V.   **Count IV - Punitive Damages**

Plaintiff seeks punitive damages as an independent claim, but also includes her request for punitive damages in the prayer for relief.  Complaint at 11, ¶ C.  Plaintiff alleges that Defendants acted "willfully, wantonly, oppressively, and with malice that implies a spirit of mischief or criminal indifference in violating Plaintiff's civil rights."  Complaint ¶ 43.  "[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action."  Ross v. Stouffer Hotel Co. (Hawai'i) Ltd., Inc., 76 Haw. 454, 466 (1994) (citing Kang v. Harrington, 59 Haw. 652, 660 (1978)). Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Count IV as an independent claim.  However, the Court permits Plaintiff to seek punitive damages as part of her requested relief.

Punitive damages are typically appropriate when allegations of malicious conduct or "willful and wanton conduct in reckless disregard of rights or interests" can be proven. Masaki v. General Motors Corporation, 71 Haw. 1, 10 (1989). "[T]he proper measurement of the amount of punitive damages is

48

the degree of the defendant's malice, oppression, or gross negligence that forms the basis for liability for punitive damages and the amount of money required to punish the defendant. Ditto v. McCurdy, 98 Haw. 123, 131 (2002) (citing Kang v. Harrington, 59 Haw. 652, 663 (1978)).

Punitive damages are available for retaliation claims in the employment context. Schefke, 96 Haw. at 427; cf. Furukawa, 85 Haw. at 18 ("Compensatory and punitive damages are generally available in employment discrimination cases, as remedies from a court or an agency, or both.") (citing Larson, 6 *Employment Discrimination* § 114.08 (1996)). Here, the allegations depict willful retaliation in response to a complaint of sexual harassment, which retaliation may have been carried out in reckless disregard of Plaintiff's rights and interests. The Court concludes that an issue of fact exists as to whether Defendants' conduct was outrageous, and therefore Plaintiff's prayer for punitive damages as part of the relief must be sustained at this time.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment. The Court GRANTS summary judgment for both Defendants as to Count I - Title VII Sexual Harassment.

The Court GRANTS summary judgment for Migita as to

49

Count II - Title VII Retaliation, and GRANTS in part and DENIES in part summary judgment for the Maui Bulletin as to Count II. Plaintiff may proceed with her claims for a constructive discharge and retaliatory hostile work environment only.

The Court GRANTS summary judgment for both Defendants as to Count III - Violation of 42 U.S.C. § 1981 and Count IV - Punitive Damages.  While Plaintiff may not pursue punitive damages as an independent cause of action, she may seek punitive damages as part of her prayer for relief.

As to Count V - Violation of State of Hawaii Fair Employment Act, the Court GRANTS summary judgment for both Defendants on the sexual harassment claim.  The Court GRANTS in part and DENIES in part summary judgment for both Defendants as to the retaliation claims.  Plaintiff may only pursue the constructive discharge and retaliatory hostile work environment claims.

The Court GRANTS Defendants' motion for summary judgment as to Count VI - Intentional Infliction of Emotional Distress.

The effect of this Order is to allow Plaintiff to proceed with Count II in part and Count V in part against the Maui Bulletin, and Count V in part against Migita.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 28, 2006.


_____
Alan C. Kay
Sr. United States District Judge